J-S54011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARREN RICHARD GENTILQUORE | : | |
| | : | |
| Appellant | : | No. 295 MDA 2019 |

Appeal from the PCRA Order Entered January 14, 2019
In the Court of Common Pleas of Susquehanna County Criminal Division
at No(s): CP-58-CR-0000183-2006

BEFORE: BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.: **FILED: MARCH 18, 2020**

Darren Richard Gentilquore appeals from the order denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"). Upon review, we affirm.

A previous panel of this Court summarized the relevant factual history of this case as follows:

In 2005, Shaun Bigelow ("Shaun"), a resident of New Jersey, purchased property in Susquehanna County, Pennsylvania, that bordered [Appellant's] property. Shaun and [Appellant] became friends. On May 26, 2006, Shaun and his brother, Ryan Bigelow ("Ryan") (collectively "the Bigelows"), along with their wives and children, arrived at Shaun's property to camp for Memorial Day [w]eekend.

Tommy McCormick ("McCormick"), another neighbor of Shaun's, invited the Bigelows to come to his property to sit around the fire. After the Bigelows' wives and children went to bed, Shaun and Ryan rode their ATVs to McCormick's property. [Appellant] began to follow the Bigelows on his [all-terrain vehicle ("ATV")]. While on the trail to McCormick's property, Ryan slowed

down and [Appellant] ran his ATV into the back of Ryan's ATV, causing damage. [Appellant] agreed to pay for the damage, resolving the situation without any incident.

The Bigelows, [Appellant], McCormick, Jim Velcheck, and two of McCormick's guests sat around the fire and imbibed alcoholic beverages. After a few hours, Ryan left the McCormick's [property] to go back to Shaun's property. Later in the evening, [Appellant] started a fight with McCormick's guest, Anthony Saverino ("Saverino"). Saverino and McCormick asked [Appellant] to leave McCormick's property and [Appellant] obliged. Shortly after [Appellant] left, gunshots were fired. The gunshots woke the Bigelows' wives and children. Shaun's wife yelled to [Appellant] to stop shooting because it was scaring the kids. There was a pause in the shooting, but shortly thereafter, gunshots began again. Ryan decided he was going to go to [Appellant's] property to tell him to stop.

Ryan went to [Appellant's] property, began banging on the storm door, and "told him to cut this shit." [Appellant] did not respond to Ryan. Ryan told [Appellant] to come outside and yelled, "Stop shooting the fucking gun, I got kids that are sleeping down there and you're scaring the shit out of them." [Appellant] did not respond so Ryan got back on his ATV and began to head towards McCormick's property to get Shaun. Ryan believed that Shaun would be able to get [Appellant] to stop shooting the gun since they were friends.

The Bigelows rode their ATVs from McCormick's property to [Appellant's] property. Shaun arrived first and quietly knocked on the door. When Ryan arrived, he ran his ATV into [Appellant's] ATV because he was angry and as retaliation for [Appellant] hitting his ATV earlier in the evening. Ryan proceeded to come to [Appellant's] front door to his house and bang on the door. [Appellant] came to the front door with a gun. Shaun said to Ryan, "Ryan, let it go he's got a gun, let it go, we'll deal with it tomorrow." Ryan approached the door, at which time, [Appellant] told him to get off his property or else he was going to "blow the barrel." Ryan told [Appellant] if he did not come outside and face him without a gun, he would "gut him like a pig" and threatened to burn his house down.

[Appellant] proceeded to stick the barrel of the gun out of the storm door and poked Ryan with the gun. Ryan then called

[Appellant] "a fucking pussy" and said, "you don't have a hair on your ass to pull that trigger." [Appellant] pulled the trigger, shooting Ryan in the abdomen at point blank range. Shaun began screaming at [Appellant], "Darren what the fuck are you doing? It's Shaun, it's Shaun, what are you doing." [Appellant] turned towards Shaun and shot him in the abdomen.

*Commonwealth v. Gentilquore*, 107 A.3d 222 (Pa.Super. 2014) (unpublished).

Appellant was charged with two counts of attempted homicide and four counts of aggravated assault. Appellant proceeded to a jury trial, where he testified that he acted in self-defense, but was convicted on all charges. On December 21, 2006, Appellant was sentenced to two consecutive terms of twenty to forty years of imprisonment at the attempted homicide convictions. Appellant received no further penalty on the remaining charges, which merged with the attempted homicide counts.

Appellant filed a timely notice of appeal. On appeal, Appellant sought to challenge the discretionary aspects of his sentence. However, after counsel failed to file a Pa.R.A.P. 2119(f) statement and the Commonwealth objected, we deemed Appellant's challenges to the discretionary aspects of his sentence waived and affirmed his judgment of sentence. *Commonwealth v. Gentilquore*, 938 A.2d 1113 (Pa.Super. 2007) (unpublished memorandum).

Appellant filed a timely *pro se* PCRA petition and amended it several times, thereafter. The petition included allegations that, *inter alia*, his appellate counsel was ineffective for failing to include the Rule 2119(f) statement in his appellate brief. After two hearings, the PCRA court found

- 3 -

that Appellant's PCRA counsel had a conflict of interest, due to the fact that he shared office space, sometimes worked with, and often praised the attorney whose ineffectiveness Appellant sought to attack in his petition. *See* N.T. PCRA Hearing, 4/30/18, at 24. New counsel filed another amended PCRA petition. On July 12, 2010, the PCRA court issued an order and opinion denying Appellant's motions and amended PCRA petition. On appeal, we issued an order vacating the PCRA court's July 12, 2010 dismissal, since it failed to first give notice of its intention to dismiss the petition pursuant to Pa.R.Crim.P. 907(1). *Commonwealth v. Gentilquore*, 38 A.3d 924 (Pa.Super. 2011) (unpublished memorandum).

On remand, the PCRA court issued a proper Pa.R.Crim.P. 907(1) notice of its intent to dismiss Appellant's petition. After several defense continuances were granted, Appellant filed an amended PCRA petition and response to the court's notice of intent to dismiss. The PCRA court issued an order and opinion, addressing Appellant's fifteen claims of counsel ineffectiveness and an allegation that the newly-enacted castle doctrine applied to him, and denying the petition without a hearing.

A timely appeal followed. On appeal, Appellant raised several allegations of ineffectiveness, including an allegation that appellate counsel was ineffective for failing to include a Rule 2119(f) statement in his appellate brief. We agreed and found that appellate counsel's ineffectiveness compromised Appellant's direct appellate rights. *Commonwealth v.*

*Gentilquore*, 87 A.3d 381 (Pa.Super. 2013) (unpublished). Without reaching any other issues, we reversed the PCRA court's order and remanded to the case to the PCRA court, directing it to reinstate Appellant's direct appeal rights *nunc pro tunc*. *Id*.

On reinstated direct appeal, Appellant challenged the trial court's admission of testimony about his state of mind and prior bad acts, along with its inclusion of color photographs that depicted the Bigelows' injuries. We affirmed Appellant's judgment of sentence, and Our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Gentilquore*, 107 A.3d 222 (Pa.Super. 2014) (unpublished memorandum) appeal denied 113 A.3d 278 (Pa. 2015).

Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and, on Appellant's behalf, filed an amended PCRA petition raising fourteen issues of trial counsel ineffectiveness. After several continuances, an evidentiary hearing was held on March 29, 2018. At the hearing, Appellant's trial counsel, Paul Walker and Matthew Comerford, both testified. After each side submitted post-hearing briefs, the PCRA court denied the petition. This timely appeal followed. The PCRA court issued its Pa.R.A.P. 1925(a) opinion without directing that Appellant file a concise statement of errors complained of on appeal pursuant to Rule 1925(b).

Appellant raises the following question for our consideration:

Whether [Appellant] was denied his right to a fair trial through the ineffective assistance of counsel, when trial counsel failed to file pretrial motions to investigate expert testimony, introduce evidence of the victim's intoxication and failed to object to the introduction of an irrelevant "assault rifle" at trial.

Appellant's brief at 7.

We begin with a review of the applicable law. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa.Super. 2017). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa.Super. 2012).

Appellant alleges three claims of ineffective assistance of counsel. We consider them mindful of the fact that counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any prong is fatal to the claim. *Id*. at 113.

First, Appellant attacks his counsels' failure to call an expert witness to explain the "flight-or-fight response," which he alleges is the reason he felt compelled to shoot his two unarmed neighbors. Appellant's brief at 22. The PCRA court found, and the Commonwealth agreed, that Appellant's allegation lacked arguable merit as it amounted to "nothing but speculation [on] what an expert would have opined as to fight[-]or[-]flight response." PCRA Court Opinion, 3/12/19, at 6. We discern no abuse of discretion in the PCRA court's reasoning.

In order to satisfy a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, Appellant must prove that an expert witness was willing and available to testify on the subject at trial, that counsel knew or should have known about the witness, and that he was prejudiced by the absence of the testimony. **See Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011). Additionally, we note that this Court may affirm the decision of the lower court on any proper ground that is supported by the record. **See Commonwealth v. Judge**, 916 A.2d 511, 517 n.11 (Pa. 2007).

A review of the record reveals that Appellant has never tendered the existence or availability of an actual expert on the flight or fight response. As a result, he has also been unable to articulate what testimony would have been available to him at trial had his attorney acquired such a witness. This failure to support his allegations with any substantive evidence undermines his claim. **See Commonwealth v. Wayne**, 720 A.2d at 456, 470-71 (Pa.

1998) ("The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance [A]ppellant's cause.").

Second, Appellant alleges that counsel were ineffective for failing to file a pre-trial motion seeking the blood alcohol content ("BAC") of the victims. *See* Appellant's brief at 28. Appellant argues that this evidence was necessary to establish "the situation on the ground as [Appellant] saw it," since the victims' impairment enhanced the reasonableness of Appellant's belief that he was at risk of death or serious bodily injury. *Id*. at 29-30. The PCRA court denied the claim, finding that Appellant had failed to prove that his trial counsel did not have a reasonable basis for their inaction or that the BAC evidence would have changed the outcome. *See* PCRA Court Opinion, 3/12/19, at 5. The record supports the PCRA court's findings.

At the PCRA hearing, Attorney Walker testified that he did not seek the BAC of the victims because he did not think that it would have been helpful. *See* N.T. PCRA Hearing, 3/29/18, at 15. In his view, the relevant facts were given to the jury, which were that the victims had been drinking, and that at least one of them had been known to "do stupid things" when he drinks. *Id*. at 25. Attorney Comeford agreed, adding that the evidence "could have cut both ways," a reasoning that, if the BAC results showed that the victims were "severely intoxicated," the jury could have viewed the victims as being

"helpless and more vulnerable" to Appellant instead of as a danger to Appellant. *Id*. at 58-59.

At trial, both victims admitted that they were intoxicated on the night of the shooting. Specifically, Shaun testified and admitted that he and his brother, Ryan, were drinking on the night of the shootings and that he drank beer and brandy. *See* N.T., Jury Trial, 11/13/06, at 73-76. Ryan also conceded that he and his brother, Shaun, had been drinking on the night of the incident and that he consumed about six bottles of Mike's Hard Lemonade. *Id*. at 299-300. Finally, Donna Bigelow, wife of Ryan, testified that her husband had been drinking on the night of the shootings. *Id*. 345.

The record supports the PCRA court's conclusion that Appellant's attorneys gave reasonable explanations for their strategic inaction, which were supported by the jury trial transcript. Appellant has failed to persuade us that awareness of the exact BAC levels of the victims would have changed the outcome of his trial. Accordingly, the PCRA court did not abuse its discretion and no relief is due.

Finally, Appellant argues that trial counsel were ineffective for failing to file a motion *in limine* to bar the admission of the AR-15 rifle into evidence and for failing to object to its admission at trial. *See* Appellant's brief at 30-31. Without providing any citations to the record or relevant authority, Appellant alleges that the firearm was irrelevant and highly prejudicial because it was not the weapon which Appellant used to shoot the victims. *Id*.

at 31-33. Therefore, its inclusion allowed the jury to infer that Appellant was the aggressor solely because he owned a controversial firearm. *Id*.

The PCRA court held that Appellant's claim was meritless, since he introduced the existence of the AR-15 when he testified. *See* PCRA Court Opinion, 3/12/19, at 7. We disagree that Appellant introduced the existence of the AR-15, since the gun itself was admitted as a Commonwealth exhibit before Appellant testified. *See* N.T. Jury Trial, 11/15/06, at 5. However, we agree that Appellant's own testimony discussed the AR-15's role in the night's events and, thus, was at a minimum relevant to rebut his defense that he was afraid. Accordingly, we discern no abuse of discretion in the PCRA court's conclusion that Appellant is not entitled to relief on his final claim.

At trial, Appellant testified that he collected guns as a hobby and had been teaching his family how to shoot them in the back yard. *Id*. at 22-23. He mentioned multiple different types of guns that he would shoot "all of the time" and stated that, as a result, there "are probably thousands of spent rounds all over the ground" in his yard. *Id*. at 25. Notably, Appellant shared an anecdote with the jury about an event prior to the incident with the victims, where he gave his minor step-son his AR-15 and asked him to test a huge piece of bullet-proof fiberglass that "they use to line the County buildings" to see if it was actually bullet proof. *Id*. at 26.

The night of the shooting, Appellant testified that he went home from a party, which the victims both attended, and began shooting rounds from his

AR-15 into the woods. *Id*. at 53. After he heard yelling, he went inside and put the gun in his safe. *Id*. at 54. A short time later, the victims came to his property and began damaging his ATV by ramming into it with one of their ATVs. Appellant observed this and yelled at his minor step-son that "we got a problem coming," grabbed his AR-15 and his 12 gauge shot-gun, loaded both of them, and gave the AR-15 to his step-son. *Id*. at 59.

Next, Appellant explained that the front door to his home opened accidentally when he was checking to make sure that it was locked. *Id*. at 63. The victims were on the other side of it. He advised them to get off of his property or he would be forced to shoot them with his gun. *Id*. at 64. After the victims threatened to "gut him like a pig" and that they would "burn his house down" if he did not come outside and face them without a weapon, Appellant testified that he felt compelled to shoot them in order to defend himself, his family, and their home. *Id*. at 70-71. Appellant than shot each victim once in the torso with his 12-gauge shotgun.

A review of the trial transcript reveals that Appellant's own testimony places the AR-15 at the center of incident, as he expressly conceded that it was his firing of this weapon that initiated the series of events that followed. As a result, Appellant's own testimony rendered the weapon highly relevant. Therefore, any objection to testimony surrounding the existence of the AR-15 would have been meritless. Further, Appellant has not persuaded us that the

verdict would have been different if the actual gun had not been shown to the jury.

Accordingly, having determined that Appellant has failed to meet his burden of convincing this Court that the PCRA court erred and that relief is due, we affirm the order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/18/2020